Willis Wagner (SBN 310900)
Tamara Wiesebron (SBN 338967)
Patrick Fortelka (SBN 364167)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, California 95814
Telephone: 916.442.1111
Facsimile: 916.448.1709
Will.Wagner@gtlaw.com
Tamara.Wiesebron@gtlaw.com
Patrick.Fortelka@gtlaw.com

Attorneys for Defendant
KEURIG GREEN MOUNTAIN, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN DIXON, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | CASE NO. 3:26-cv-02172-LL-BJW<br><br>*Hon. Linda Lopez*<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT.**<br><br>**DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES; FED. R. CIV. PROC. 12(b), 12(f)**<br><br>[*Filed and served concurrently with Request for Judicial Notice; Declaration of Tamara Wiesebron*]<br><br>Date: September 22, 2026<br>Courtroom: 14B<br><br>Action Filed: April 7, 2026<br>Amended Complaint Filed: July 6, 2026<br>Trial Date: Not set |

**TO THE COURT, PLAINTIFF, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 22, 2026, or as soon thereafter as the matter may be heard, in Courtroom 14B of the United States District Court, Southern District of California, located at 333 West Broadway, San Diego, California 92101, Defendant Keurig Green Mountain, Inc. ("Defendant") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and 12(f) for an order:

(1) dismissing Plaintiff Ryan Dixon's ("Plaintiff") First Amended Complaint with prejudice; and

(2) striking Plaintiff's class allegations.

This Motion is made following the conference of counsel that took place on July 16, 2026. This Motion is made and based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Tamara Wiesebron, all pleadings, and such other written and oral argument as the Court may entertain on this Motion.

Respectfully submitted,

Dated: July 28, 2026 GREENBERG TRAURIG, LLP

By: */s/Willis Wagner*
Willis Wagner
Tamara Wiesebron
Patrick Fortelka

Attorneys for Defendant
KEURIG GREEN MOUNTAIN, INC.

# TABLE OF CONTENTS

I. INTRODUCTION ........ 6

II. STATEMENT OF ALLEGED FACTS ........ 7

A. The *Smith* Action ........ 7
B. Plaintiff's FAC ........ 9

III. LEGAL STANDARD ........ 10

IV. ARGUMENT ........ 11

A. Res Judicata Bars Plaintiff's Claims ........ 11

1. The *Smith* Final Judgment is a Final Judgment on the Merits ........ 11
2. Plaintiff Is in Privity with the *Smith* Class as a Class Member ........ 12
3. The Claims Arise from the Same Transactional Nucleus of Facts ........ 13
4. The *Smith* Release Independently Bars Plaintiff's Claims ........ 14

B. The Class Allegations Should Be Stricken ........ 15
C. Reasonable Consumers Are Not Deceived ........ 16

1. Ninth Circuit Precedent Requires Dismissal ........ 17
2. Plaintiff's #5 Plastic Theory Is Implausible ........ 20
3. Plaintiff's Cited Studies Undercut His "Not Recyclable" Theory ........ 22

D. Plaintiff's Claims Are Barred by SB 343's Safe Harbor ........ 23

1. SB 343 and Its Safe Harbor Provision ........ 24
2. Plaintiff's Claims Are Barred by the SB 343 Safe Harbor, Including Those Brought Under § 17580.5 ........ 25

E. The Preliminary Injunction Against SB 343 Confirms That Plaintiff's Claims are Unconstitutional Under Free Speech and Due Process Principles. ........ 28
F. Plaintiff's Unjust Enrichment Claim Fails ........ 29

V. CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) .......... 13

*In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .......... 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 10

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 29

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) .......... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10

*Bhotiwihok v. Fairlife, LLC*, No. 2:25-CV-01650-ODW, 2026 WL 413749 (C.D. Cal. Feb. 13, 2026) .......... 26

*Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) .......... 18

*Bodenburg v. Apple Inc.*, 146 F.4th 761 (9th Cir. 2025) .......... 17

*Bowler v. Nestlé Health Sci. U.S., LLC*, 763 F. Supp. 3d 996 (C.D. Cal. 2025) .......... 19

*California League of Food Producers v. Bonta*, No. 3:26-cv-01675-WQH-BLM, 2026 WL 2055589 (S.D. Cal. July 14, 2026) .......... 28, 29

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......... 14

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010) .......... 11

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984) .......... 11

*Crawford v. Honig*,
37 F.3d 485 (9th Cir. 1994) .......... 12

*Curtis v. 7-Eleven, Inc.*,
No. 21-cv-6079 (N.D. Ill. Sept. 13, 2022) .......... 21

*Dinan v. Sandisk LLC*,
No. 18-CV-05420-BLF, 2019 WL 2327923 (N.D. Cal. May 31, 2019) .......... 18

*Duchimaza v. Niagara Bottling, LLC*,
619 F. Supp. 3d 395 (S.D.N.Y. 2022) .......... 21

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......... 16, 22

*Garza v. Spectrum Brands Pet LLC*,
760 F. Supp. 3d 1039 (E.D. Cal. 2024) .......... 30

*Gudgel v. Clorox Co.*,
514 F. Supp. 3d 1177 (N.D. Cal. 2021) .......... 30

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998),
*overruling recognized on other grounds by DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024) .......... 12

*Harris v. Cnty. of Orange*,
682 F.3d 1126 (9th Cir. 2012) .......... 11

*Hawkins v. Shimano North America Bicycle Inc.*,
729 F. Supp. 3d 989 (C.D. Cal. 2024) .......... 30

*Hernandez v. County of Monterey*,
305 F.R.D. 132 (N.D. Cal. 2015) .......... 15

*Kachuck Enters. v. Mission Produce, Inc.*,
No. 2:25-CV-01523-AH-JCX, 2026 WL 216475 (C.D. Cal. Jan. 22, 2026) .......... 30

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) .......... 17

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 16, 17, 21, 23

*Mpoyo v. Litton Electro-Optical Sys.*,
430 F.3d 985 (9th Cir. 2005) .......... 13

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .......... 11

*Rein v. Providian Fin. Corp.*,
270 F.3d 895 (9th Cir. 2001) .......... 11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .......... 14

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 16

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......... 13

*Smith v. Keurig Green Mountain, Inc.*,
2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) .......... 6, 8, 9, 21

*Steiner v. Vi-Jon Inc.*,
723 F. Supp. 3d 784 (N.D. Cal. 2024) .......... 18

*Swartz v. Coca-Cola Co.*,
21-CV-04643-JD, 2022 WL 17881771 (N.D. Cal. Nov. 18, 2022) .......... 21

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
322 F.3d 1064 (9th Cir. 2003) .......... 13

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......... 15

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) .......... 16

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) .......... 15

*Western Radio Servs. Co. v. Glickman*,
123 F.3d 1189 (9th Cir. 1997) .......... 11

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) .......... 17, 18, 23

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 27

*Lopez v. Nissan N. Am.*,
201 Cal. App. 4th 572 (2011) .......... 27

**State Statutes**

Cal. Bus. & Prof. Code § 17208 .......... 12

Cal. Bus. & Prof. Code § 17580.5 ....................26, 27
Cal. Pub. Res. Code § 42355.51 ....................24
Cal. Pub. Res. Code § 42355.51(b)....................26
Cal. Pub. Res. Code § 42355.51(b)(1) ....................25, 26
Cal. Pub. Res. Code § 42355.51(b)(2)(A) ....................25, 26
Cal. Pub. Res. Code § 42355.51(d)(2) ....................24

**Rules**

Fed. R. Civ. P. 12(b)(6)....................10, 17
Fed. R. Civ. P. 12(f) ....................11, 15
Fed. R. Civ. P. 23 ....................12, 15
Fed. R. Civ. P. 23(b)(3)....................16
Fed. R. Civ. P. 23(c)(1)(A) ....................15
Fed. R. Civ. P. 23(d)(1)(D) ....................11, 15

**Regulations**

16 C.F.R. § 260.12(b)(1)....................24
16 C.F.R. § 260.12(b)(2)....................22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Ryan Dixon's ("Plaintiff") First Amended Complaint ("FAC") alleges that Keurig Green Mountain, Inc.'s ("Keurig") K-Cup pods ("Pods" or "Products") are misleadingly advertised as "recyclable" because various jurisdictions do not accept them for recycling. But Keurig does not claim that the Products will ultimately be recycled in all jurisdictions. In fact, it clearly and conspicuously does the opposite by including a qualifying statement on the label that directs consumers to "Check Locally – Not Recycled In Many Communities", which appears directly below the word "recyclable" and is connected by an asterisk.

Indeed, adding this qualifying language to the packaging was the injunctive relief agreed to by Keurig in a 2022 nationwide class action settlement in the Northern District of California. *See Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *1 (N.D. Cal. Feb. 27, 2023) ("Class Settlement" or "*Smith* Final Judgment"). The *Smith* case challenged recyclable claims on Keurig packaging, and the *Smith* Final Judgment—including the qualifying language stating that the Products are not accepted in "many communities"—constitutes a litigated, final judgment on the merits. The Class Settlement bars the FAC under the principles of res judicata and specifically releases the claim for any United States consumer who purchased Pods within the *Smith* class period. The only new purchasing allegation made by Plaintiff since reviewing Keurig's prior motion on this topic is to plead a non-exclusive 2025 Pod purchase. This is facially insufficient to defeat res judicata, because the FAC fails to plead that Plaintiff did not purchase Pods during the *Smith* class period. Even assuming *arguendo* that Plaintiff evades res judicata, his class allegations should still be stricken despite the FAC being adjusted to exclude members of the *Smith* class because such a class could not be administered without individualized inquiries into putative member purchasing histories of Keurig Pods.

Plaintiff's own FAC also defeats his deception theory on its face. Plaintiff acknowledges that the word "Recyclable" on the Products' packaging is accompanied by

an asterisk to the qualifying statement appearing directly beneath the recyclability claim, advising consumers to "Check Locally" because the Products are "Not Recycled in Many Communities." FAC ¶¶ 19, 35. No reasonable consumer could view that labeling and conclude the Products are actually recycled in every community or most communities. The FAC also adds third-party surveys in an effort to show the Products are recyclable nowhere. But those very sources show the opposite—that the Products are indeed recycled in some communities.

The FAC fails for several other reasons too. It is barred by California's Truth in Recycling Act ("SB 343"), which creates the sixty percent recycling threshold Plaintiff seeks to enforce. Recognizing the sweeping changes SB 343 imposes on recyclability advertising, the California Legislature intentionally created a compliance window exempting from enforcement all products manufactured prior to October 4, 2026. Additionally, SB 343 has been preliminarily enjoined by this District, in a decision holding that SB 343 claims are unconstitutional on Due Process vagueness and First Amendment grounds. The FAC is likewise an unconstitutional assault on truthful speech and seeks to enforce vague or nonsensical standards, failing for the same reasons as SB 343.

Because Plaintiff's claims fail as a matter of law, and because Plaintiff has already used his amendment of right in an attempt to cure any deficiencies, this Court should dismiss the FAC without leave to amend.

## II. STATEMENT OF ALLEGED FACTS

### A. The *Smith* Action

In 2018, Plaintiff Kathleen Smith brought a consumer class action ("*Smith* Action") against Keurig alleging that "Defendant's 'recyclable' labeling on its plastic single-serve coffee pods . . . is false and misleading." Request for Judicial Notice ("RJN") Ex. A at 1. The *Smith* Action alleged the violation of various consumer fraud statutes, because despite advertising the pods as "recyclable," "municipal recycling facilities are not properly equipped to handle the pods" and even if they can, the pods "often end up in landfills anyway[s]." *Id.*

On February 24, 2022, the parties filed a stipulation of settlement with the Court. *See* RJN Ex. B ("*Smith* Settlement Agreement"). "Class Members" were defined as "all persons or entities in the United States who purchased the Challenged Products during the Class Period." *Id.* at 2. As part of the settlement relief, the parties agreed that "Keurig and its Affiliates shall not use a Recycling Representation without clearly and prominently including the qualifying statement, 'Check Locally – Not Recycled in Many Communities.'" RJN Ex. B § 3.A.1. This "qualifying statement" had to appear "in close proximity to, and in a font size no smaller than 55% of the font size of, the Recycling Representation." *Id.* The *Smith* Settlement Agreement also attached a "representative example of the new qualifying language and font size ratio compliant" with the settlement relief:




*Id.*, Ex. H. The Class Members released "all claims . . . existing now or ***in the future***, arising out of or related to (1) Recycling Representations made with respect to the Challenged Products prior to the Graphics Transition End Date and/or (2) Settlement Recycling Representations made with respect to the Challenged Products."[1] *Id.* at 20 (emphasis added).

[1] "Recycling Representation" "means any representation to any third party (in any labeling, marketing, advertising or otherwise) that the Challenged Products are recyclable (through use of the word 'Recycling' or any variation thereof or through the conspicuous use of the Chasing Arrow symbol or any variation thereof)." RJN Ex. B at § 1.A.37. "Settlement Recycling Representation" "means any representation made to any third party (in any labeling, marketing, advertising or otherwise) in accordance with the terms" of the *Smith*

On February 27, 2023, the Court granted final approval of the class action settlement following a final fairness hearing. *See* RJN Ex. A. The Court approved the class definition, which was "all Persons in the United States who purchased Keurig's Pods for personal, family or household purposes within the Class Period." *Id.* at 3. The Class Period was from June 8, 2016, to the date Class notice was first published on August 8, 2022. *Id.*; RJN Ex. C. In approving the Settlement Agreement, the Court found that "the proposed settlement [was] fair, adequate, and reasonable, and that the Class Members received adequate notice." RJN Ex. A at 7. The Court also found that "the Settlement provides significant injunctive relief"—*i.e.*, the requirements that Keurig include qualifying language in its labels—"that gets at the heart of [the] complaint by requiring [Keurig] to change its labeling and advertising nationwide and on its website." *Id.* at 10.

**B. Plaintiff's FAC**

On April 7, 2026, Plaintiff filed his original class action complaint asserting claims under the California Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA") as well as claims for negligent misrepresentation and unjust enrichment. Defendant moved to dismiss the original Complaint and to strike the class allegations. Rather than oppose that motion, Plaintiff filed the operative FAC on July 6, 2026. Plaintiff brings this action on behalf of a putative nationwide class and California sub-class of all persons who purchased Pods during the applicable statute of limitations. FAC ¶ 39.

Plaintiff alleges that Defendant promotes the recyclability of its Pods, prominently displaying the words "Recyclable K-Cup Pods" alongside the chasing arrows recycling symbol. *Id.* ¶ 18. According to Plaintiff, and despite the clear label inserted in the FAC showing a conspicuous disclaimer, he alleges that any qualifying language appears in fine print that is visually separated from the primary recyclability claim and unlikely to be noticed by consumers. *Id.* ¶ 19.

---

Settlement Agreement's injunctive relief. *Id.* at 7, ¶ 45.

Plaintiff contends that these representations are false and misleading because the majority of municipal recycling programs serving at least 60 percent of U.S. consumers do not accept Pods. *Id.* ¶¶ 29-34.[2] Plaintiff further contends that the qualifier "Check Locally – Not Recycled in Many Communities" fails to cure the alleged misrepresentation because it does not inform consumers whether Pods are accepted in their specific communities and may lead consumers to incorrect conclusions where local programs accept #5 plastic generally but not Pods specifically. *Id.* ¶ 36. Plaintiff alleges that he purchased the Products from a Ralphs grocery store in San Diego County, and adds for the first time that the purchase occurred "on or around June 2025." *Id.* ¶¶ 3, 8-9. The FAC does not plead that this was his exclusive purchase of Pods.

The FAC maintains Plaintiff's core theory and causes of action. The FAC only makes a series of targeted amendments that track the arguments raised in Defendant's motion. Plaintiff now pleads a non-exclusive June 2025 Pod purchase date and redraws the putative class to begin after the *Smith* Settlement Agreement and to exclude *Smith* class members; cites third-party studies—a 2025 Greenpeace report, the How2Recycle Decision Matrix, and an SCS Engineers report—in support of his recyclability allegations; and refines his Green Guides allegations. *Id.* ¶¶ 8, 26-29, 39, 40(f). As explained below, none of these amendments cures the defects Defendant identified in the original Complaint.

## III. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of a complaint. To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true but need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court

[2] The FAC contains two sets of paragraphs 27-29, The citation here begins at the second paragraph 29, which is actually paragraph 32.

may also consider documents incorporated by reference in a complaint and matters of which the Court may take judicial notice, including court records from related proceedings. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Rule 23(d)(1)(D) independently authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons."

## IV. ARGUMENT

### A. Res Judicata Bars Plaintiff's Claims

Plaintiff's FAC—which targets the same recyclability representations that were resolved by the *Smith* Final Judgment—is barred by res judicata. Plaintiff attempted to but failed to plead around this issue after reviewing Keurig's initial Motion to Dismiss, where the same res judicata argument was made. The FAC alleges for the first time that Plaintiff purchased Pods in June 2025, but the FAC fails to actually plead that Plaintiff did not purchase Pods during *Smith* class period. This omission warrants dismissal.

In the Ninth Circuit, claim preclusion bars a subsequent action whenever three elements are met: "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). The doctrine also bars claims that "were raised or could have been raised in the prior action." *Id.* All three elements are satisfied here.

#### 1. The *Smith* Final Judgment is a Final Judgment on the Merits

It is well established that a judicially approved class action settlement constitutes a "final judgment on the merits" for purposes of claim preclusion. *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 903 (9th Cir. 2001). As one court in this circuit explained, "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cole v. Asurion Corp.*, 267 F.R.D. 322, 331 (C.D. Cal. 2010)(quoting *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984)).

The *Smith* Final Judgment—which incorporated and approved the *Smith* Settlement Agreement and discharged the Released Parties from all liability for the Released Claims—satisfies this element. *See* RJN Ex. A Judgment at 18-19.

**2. Plaintiff Is in Privity with the *Smith* Class as a Class Member**

Absent class members who do not opt out of a Rule 23 class action are bound by the resulting judgment if they were adequately represented and afforded adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruling recognized on other grounds by DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024); *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) ("Class members who are not parties to a class action suit nevertheless are bound by the judgment in the suit, and due process is satisfied, if the absent members' interests are adequately represented by the class members who are present.").

The *Smith* Final Judgment certified a nationwide class of "all Persons in the United States who purchased Keurig's Pods for personal, family or household purposes within the Class Period"—from June 8, 2016, to the date Class notice was first published on August 8, 2022. RJN Ex. A at 3; RJN Ex. C. Plaintiff now affirmatively alleges that he purchased the Products from a Ralphs grocery store "on or around June 2025." FAC ¶ 8. But Plaintiff nowhere alleges that his June 2025 purchase was his only or first purchase of the Products. FAC ¶ 8. The applicable statute of limitations periods for his asserted claims (four years for UCL) reach back into the *Smith* Class Period, which ran from June 8, 2016 through August 8, 2022. RJN Ex. A at 8; RJN Ex. C; Cal. Bus. & Prof. Code § 17208. Plaintiff did not opt out of the *Smith* Action. *See* RJN Ex. D at Ex. B (listing the twelve individuals who opted out). Plaintiff also makes no allegation that he was not part of the *Smith* Class Action. His attempt to plead around *Smith* by adding a single June 2025 purchase does not evade res judicata.

The *Smith* court approved a comprehensive notice plan—including direct email notice to 1.7 million people, a follow-up email notice to 1.4 million people, and a digital media campaign—and expressly found that "the parties have sufficiently provided the best

practicable notice to the Class Members." RJN Ex. A at 8. That is all due process requires. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member.").

The *Smith* court also expressly evaluated and approved the adequacy of class representation, finding that class representatives Smith and Downing and class counsel had vigorously prosecuted the action over more than four years, including through class certification, extensive discovery, and two full-day mediation sessions. RJN Ex. A at 6, 16-19. Plaintiff cannot collaterally challenge those findings here.

**3. The Claims Arise from the Same Transactional Nucleus of Facts**

The Ninth Circuit assesses identity of claims by evaluating four factors, "which [are not applied] mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). The transactional nucleus inquiry is "outcome determinative." *Id.* at 988. "[A]n imaginative attorney" cannot "avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

Both the *Smith* Action and this case arise from the identical transactional nucleus: alleged misrepresentations regarding the recyclability of Keurig's Products. Both actions challenge the same Products (Keurig Pods labeled as recyclable). Both actions allege violations of California consumer protection statutes (the UCL, FAL, and CLRA). Both actions allege the same core injury (a price premium based on alleged misrepresentations). And, critically, this case challenges the very label that was the negotiated injunctive relief in *Smith*: the qualifying statement "Check Locally – Not Recycled in Many

Communities." *Compare* FAC ¶ 19, *with* RJN Ex. B § III.A.1 & Ex. H. The court in *Smith* found this very labeling "gets at the heart of [the] complaint." RJN Ex. A at 10.

The four-factor test is satisfied. Allowing this action to proceed would directly impair the rights established by the *Smith* Final Judgment, would involve substantially the same evidence regarding label content and recyclability of the Products, and would adjudicate the very same alleged injury that was settled in *Smith*.

#### 4. The *Smith* Release Independently Bars Plaintiff's Claims

Even if traditional res judicata principles did not apply, the broad release in the *Smith* Settlement Agreement separately bars Plaintiff's claims. The Ninth Circuit has long held that a class settlement may release "not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action . . . even though the claim was not presented and might not have been presentable in the class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)).

The *Smith* release is broad. It covers "all claims . . . *existing now or in the future***,** arising out of or related to (1) Recycling Representations made with respect to the Challenged Products prior to the Graphics Transition End Date and/or (2) *Settlement Recycling Representations* made with respect to the Challenged Products." RJN Ex. B § IV.A (emphasis added). "Settlement Recycling Representations" means representations made in accordance with the very injunctive relief Plaintiff now challenges—including the "Recyclable" representation and the "Check Locally – Not Recycled in Many Communities" qualifier. *Id.* § I.A.45.

Plaintiff's claims are covered by the release: They challenge the same Products, the same recyclability claims, and the same "Check Locally" qualifier the *Smith* Settlement Agreement specifically authorized. The Ninth Circuit has enforced releases in materially indistinguishable circumstances. *See Reyn's Pasta Bella*, 442 F.3d at 749 (enforcing release where "the price-fixing predicate . . . and the underlying injury are identical").

Plaintiff is barred from relitigating the adequacy of the *Smith* injunctive relief.

**B. <u>The Class Allegations Should Be Stricken</u>**

Where a complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may, prior to discovery, move to strike class allegations pursuant to Federal Rule of Civil Procedure 12(f). Federal Rule of Civil Procedure 23 directs courts to address class issues "[a]t an early practicable time," and permits them to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D).

Accordingly, the court has an independent obligation to decide whether an action was properly brought as a class action, and nothing in Rule 23 prohibits a defendant from seeking early resolution of the class certification question. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009). A court may strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

Where identifying class members would require individualized fact-finding or mini-trials, a class action is inappropriate. *Hernandez v. County of Monterey*, 305 F.R.D. 132, 155 (N.D. Cal. 2015). The Court should strike Plaintiff's class allegations because the proposed class definition is facially defective and cannot be maintained without extensive individualized fact-finding. Plaintiff purports to bring this action on behalf of a National Class consisting of "[a]ll persons in the United States who purchased Products during the applicable statute of limitations after the Effective Date of settlement in *Smith*," and a California Sub-Class of all persons in California who did the same. FAC ¶ 39. Plaintiff has attempted to plead around the *Smith* Final Judgment by redrawing the class to begin after its Effective Date and by expressly excluding persons who purchased the Products during the *Smith* class period and did not validly opt out. FAC ¶¶ 39, 40(f). But that facial carve-out does not render the class ascertainable; it instead confirms that the Plaintiff's proposed class membership here cannot be determined without an individualized inquiry into the settlement class certified in *Smith.* The *Smith* settlement

class includes all persons in the United States who purchased the challenged products between June 8, 2016 and the date notice was first published in 2022. The *Smith* Settlement Agreement required class members to affirmatively submit a valid and timely Request for Exclusion in order to be excluded from the class. *See* RJN Ex. D at Ex. B. Even accepting Plaintiff's carve-out at face value, determining who purchased a Keurig Pod and who did not from 2016 to 2022 is a consumer-by-consumer inquiry that does not disappear because Plaintiff amended the class definition, and that cannot be resolved through common proof.

With Plaintiff's carve-out excluding members of the *Smith* settlement class, the claims administrator or the Court will be required to determine, for each putative class member, whether that individual made a purchase of Keurig Pods during a six-year period. Such consumer-by-consumer adjudication is precisely the type of individualized fact-finding that defeats class certification under Rule 23(b)(3). *See Van v. LLR, Inc.*, 61 F.4th 1053, 1067-1069 (9th Cir. 2023) (where the trial process must assess thousands of claims one claim at a time, the individualized issue weighs heavily in the predominance balancing). Because these deficiencies are apparent on the face of the FAC and no amount of discovery can cure them, the class allegations should be stricken. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (striking class allegations at the pleading stage where the class definition was facially overbroad and individual reliance inquiries would predominate over common questions).

### C. Reasonable Consumers Are Not Deceived

Plaintiff fails to allege that "a reasonable consumer is likely to be misled" by Keurig's recyclability representations. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). To survive dismissal, Plaintiff must demonstrate "more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* at 882. He must instead show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in

the circumstances, could be misled." *Id*. Courts routinely resolve these cases at the pleading stage when a plaintiff's theory depends on reading a label selectively, ignoring qualifying language, or advancing an interpretation that a "significant portion" of reasonable consumers would not adopt. *See Bodenburg v. Apple Inc.*, 146 F.4th 761, 769-70 (9th Cir. 2025); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-31 (9th Cir. 2019). This is precisely such a case.

Plaintiff's statutory consumer-protection claims and negligent misrepresentation claim all rest on the same premise: that the Products' packaging deceives reasonable consumers into believing the Products are universally recyclable. The FAC defeats that theory on its face. Plaintiff acknowledges that the very packaging he challenges qualifies the word "Recyclable" with an asterisked disclosure directly beneath it, advising consumers to "Check Locally" because the Products are "Not Recycled in Many Communities." FAC ¶¶ 19, 35-37. Those disclosures indicate that recyclability is conditional, depends on local recycling capabilities, and requires consumer preparation of the pod before recycling. Because no reasonable consumer could view that labeling and conclude that the Products are unconditionally recyclable in every community, Plaintiff fails to plead deception as a matter of law, and his UCL, FAL, CLRA, and negligent misrepresentation claims should be dismissed with prejudice.

**1. Ninth Circuit Precedent Requires Dismissal**

The Ninth Circuit has established a structured framework for evaluating product labels at the Rule 12(b)(6) stage. Courts begin by examining the front label. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 779-80 (9th Cir. 2024); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023). Where, as here, the front label is not alleged to be unambiguously deceptive, the court may consider clear qualifiers on the label to resolve ambiguity. *McGinity*, 69 F.4th at 1098; *Whiteside*, 108 F.4th at 780-82.

Dismissal is warranted here, because the word "Recyclable" on the Products' packaging is accompanied by an asterisk directly linking it to the qualification "Check Locally – Not Recycled in Many Communities." FAC ¶ 23. The Ninth Circuit's decision

in *Whiteside* is directly on point. In *Whiteside*, the plaintiff challenged baby wipes labeled "plant-based wipes*" with a corresponding front-label qualifier stating "*70%+ by weight." 108 F.4th at 775-76. The Ninth Circuit affirmed dismissal, holding that the asterisk and qualifying statement made it "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. at 785. The court articulated a broad and dispositive principle: "Even before reading the back label, the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume that the Products were 100% plant-based." *Id*. (emphasis added).

Here, the Products' label has an asterisk affixed to the recyclability claim, which directs the consumer to the qualification appearing immediately beneath it: "Check Locally – Not Recycled in Many Communities." FAC ¶¶ 19, 23. The presence of that asterisk, as a matter of law, puts any reasonable consumer on notice that the recyclability representation is qualified, making it unreasonable to assume that the Products are unconditionally recyclable in all communities. *Whiteside*, 108 F.4th at 785. Plaintiff cannot read the asterisk out of the label and construct a deception claim from the isolated word that remains. *See id*. ("Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled.") (quoting *Bobo v. Optimum Nutrition, Inc.,* No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015); *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *6 (N.D. Cal. May 31, 2019) ("[T]he asterisk directly informs the consumer that he should be aware that he needs to look elsewhere on the package before applying his own assumptions").

Moreover, the qualifying statement "Check Locally – Not Recycled in Many Communities" is located clearly, directly adjacent to the "recyclable" statement and does not contradict the recyclability representation. Rather, it defines and clarifies its scope. The qualifier "provides additional clarity rather than seeking to correct a misrepresentation," which defeats a deception claim at the pleading stage. *Steiner v. Vi-Jon Inc.,* 723 F. Supp. 3d 784, 793 (N.D. Cal. 2024) (dismissing UCL, FAL, and CLRA claims where asterisked front-label claim was linked to clarifying qualifier); *see also*

*Bowler v. Nestlé Health Sci. U.S., LLC*, 763 F. Supp. 3d 996, 1004 (C.D. Cal. 2025) (dismissing claims with prejudice where "asterisked qualifications on the product labels render deception implausible"). The Products tell consumers two things simultaneously: (1) the Products are capable of being recycled, and (2) recycling is not available in many communities and consumers should check locally. A consumer who reads both statements is informed, not deceived.

Plaintiff's allegations regarding real-world recyclability rates fare no better. Plaintiff relies on a survey conducted by SCS Engineers in ten states, which allegedly found that municipal programs serving at least 60 percent of U.S. consumers do not accept the Products. FAC ¶¶ 29, 27-28, 34. As described below, the studies Plaintiff cites do not show that the Products are incapable of being recycled, only that recycling infrastructure for them is unavailable in certain communities. *Id.* ¶¶ 26-34. That concession undermines rather than supports his deception theory: it is precisely because recyclability depends on local infrastructure that Keurig's packaging instructs consumers to "Check Locally" and discloses that the Products are "Not Recycled in Many Communities." The SCS findings confirm the accuracy of that qualifier, not its inadequacy.

Plaintiff's next argument that Keurig's K-Cycle mail-back program constitutes an implicit admission that the Products are not recyclable through ordinary curbside systems also does not support a plausible deception claim. *Id.* ¶ 25. The existence of an alternative or supplemental recycling option does not contradict a qualified recyclability representation; it complements one. Keurig's packaging already discloses that the Products are "Not Recycled in Many Communities" and instructs consumers to "Check Locally." Offering a mail-back program as an additional channel for consumers who lack access to curbside recycling options for the Products is entirely consistent with the disclosure that curbside recycling availability is limited and location-dependent. A reasonable consumer reading the product packaging understands that recyclability of the Products depends on the consumer's location and available infrastructure, which is

//

precisely what the label discloses. The existence of Keurig's supplemental recycling initiative does not change this.

Finally, this packaging, with the qualifiers directly next to "Recyclable," is nearly the exact design approved in the *Smith* Final Judgment that the court determined to be non-deceptive:







*Compare* RJN Ex. B, Ex. H (approved label on left), *with* FAC ¶ 23 (label at issue on right).To put a finer point on it, the *Smith* Court reviewed a near identical label to the one at issue here. In approving the Class Settlement and issuing its final judgment, it found that the new label—*i.e.*, including qualifying language—constituted "significant injunctive relief that gets at the heart of [the] complaint by requiring [Keurig] to change its labeling and advertising nationwide and on its website." RJN Ex. A at 10. Surely Plaintiff cannot take the position that a Northern District of California federal court approved qualifying language that is deceptive to a reasonable consumer. Yet that is the decision Plaintiff urges this Court to reach, as Plaintiff can only state a claim for relief here if the North District of California's approved qualifier—"Check Locally – Not Recycled In Many Communities"—is deceptive to reasonable consumers.

**2. Plaintiff's #5 Plastic Theory Is Implausible**

Plaintiff's contention that the "Check Locally" instruction is itself deceptive because local programs may accept polypropylene #5 plastic generally while rejecting the Products specifically is not a plausible theory of consumer deception under the reasonable consumer standard. *See* FAC ¶ 36. Plaintiff's theory is speculative and beside the point.

As the court explained in *Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022), "'recyclable' simply means 'capable of being recycled.'" *Id*. at *12. "It is about the product itself, meaning its intrinsic character. It is not about what happens to the product after it goes into the recycling bin." *Id*. at *13. Plaintiff does not dispute that Pods are made from polypropylene #5 plastic—a recyclable material. Plaintiff instead argues that "recyclable" should mean that the Pod will actually be recycled, but that is not how a reasonable consumer understands the term, particularly when the qualifier expressly alerts consumers that recycling is not available everywhere. And in *Swartz v. Coca-Cola Co.*, the court rejected a plaintiff's suggestion that a recyclable claim meant actually being recycled as inconsistent with both the ordinary meaning of the term and with California and federal law. 21-CV-04643-JD, 2022 WL 17881771, *1 (N.D. Cal. Nov. 18, 2022). The court observed that in "everyday usage, 'recyclable' is an adjective that means capable of being recycled . . . or a noun that denominates an object that can be recycled," and that it "does not mean a promise that an object will actually be recycled[.]" *Id*; *see also Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 413 (S.D.N.Y. 2022) ("[T]he Green Guides' focus is explicitly on the availability and existence of recycling programs and collection sites, whether a recyclability claim is misleading turns not on the incidence of recycling, but whether a substantial majority of consumers can place such products into the recycling stream."). The court further explained that the Green Guides definition of "recyclable" turns on whether a product is "comprised of materials that can be recycled by existing recycling programs—not, as plaintiffs say, on whether the product is converted into reusable material." *Id.* at *2.

Plaintiff's theory requires the Court to assume that a reasonable consumer who follows the instruction "Check Locally" will ask the wrong question, receive a misleadingly incomplete answer, and act on it—a chain of speculative inferences that falls far short of the probability of deception that the reasonable consumer standard demands. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-85 (9th Cir. 2021) (affirming dismissal

because plaintiffs' theory required consumers to draw unreasonable and fanciful inferences from the label despite contextual cues that dispelled the alleged deception). The reasonable consumer standard does not ask whether a disclosure could theoretically lead some consumers to conduct further inquiry that might yield an incomplete answer; it asks whether the label as a whole is likely to deceive a significant portion of reasonable consumers. *Ebner*, 838 F.3d at 965 (rejecting deception claim where plaintiff's theory relied on speculative assumptions about how consumers might interpret packaging, rather than demonstrating a probability that reasonable consumers would be misled). There is nothing deceptive about a label that tells consumers to seek out item-specific local information. To the contrary, that instruction is exactly what the FTC's Green Guides contemplate when recyclability is geographically limited. *See* 16 C.F.R. § 260.12(b)(2).

### 3. Plaintiff's Cited Studies Undercut His "Not Recyclable" Theory

Plaintiff's FAC marshals three outside sources—a 2025 Greenpeace report, the GreenBlue/How2Recycle Decision Matrix, and a report prepared for TINA.org by SCS Engineers—for the sweeping proposition that K-Cup pods are "unable to be recycled." FAC ¶¶ 26-34. But those sources do not support that premise.

First, Plaintiff alleges the How2Recycle Decision Matrix classifies single-use pods as "not yet recyclable." FAC ¶ 28. But the Matrix's companion guide defines that term, and it does not mean "not recyclable." RJN Ex. E at 4. Under How2Recycle's own thresholds, a package is considered "Not Yet Recyclable" when access is below 20%. A sub-20% designation is not zero: by the framework's own terms, the Pods are collected and recyclable in some communities. *Id*.

The SCS report from TINA.org undercuts Plaintiff's theory even more directly. FAC ¶¶ 29, 34. First, the survey is far thinner than the FAC implies: it rests on just 17 responses (15 Material Recovery Facilities ("MRFs") and two transfer stations), and SCS discloses that "only 20 percent of the facilities contacted completed the questionnaire." RJN Ex. F at 5,7. Second, and dispositively, SCS's own data show the Pods are recycled in some places: "only 20 percent of respondents said that they explicitly accept K-Cups,"

a "majority (59 percent) of surveyed facilities" accept Plastic #5, and four of the seventeen respondents would accept K-Cups. RJN Ex. F at 7. The report likewise confirms functioning recycling pathways, including Keurig's K-Cycle program and third-party TerraCycle and g2 services. *Id*.

Plaintiff's reliance on the 2025 Greenpeace report fares no better. FAC ¶ 27. The report does not provide the kind of facility-level, neutral methodology needed to support Plaintiff's sweeping "not recyclable" theory. The survey's results are unreliable, as the survey was conducted by volunteers, and only received data from about one-third of facilities surveyed, leaving the recyclability acceptance rates for the remaining facilities up to conjecture—an approach too attenuated to establish that Keurig's Products are not accepted or recycled in practice. RJN Ex. G at 52. Moreover, the report's three headline figures—0% MRF acceptance, 0% population access, and 0% national capacity for #5 coffee pods—rest on underlying acceptance data that is not in the report: where the facility-level data should appear, the report contains only unfilled placeholders reading "LINK TO APPENDIX B ADD LINK" and "Appendix D . . . ADD LINK." *Id.* at 52, 55. The pod row also lumps together "PP#5 or PS#6 coffee pods," combining distinct resin types. *Id*. at 31.

Taken together, the data from these studies establish only what Keurig's label already says: the Products are capable of being recycled, but are not yet recycled in many communities, so consumers should check locally. Because a representation that is accurate as qualified is not deceptive as a matter of law, Plaintiff's studies cannot save his claims. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024).

**D. <u>Plaintiff's Claims Are Barred by SB 343's Safe Harbor</u>**

Plaintiff's claims are barred because they are premised on a legal standard that exists only in California's SB 343 and private enforcement of SB 343 is expressly barred against products manufactured before October 4, 2026. Although Plaintiff does not cite SB 343 by name, the 60 percent consumer access threshold that runs throughout his FAC as the

measure of false advertising exists in only two places in the law: the FTC's Green Guides and SB 343. The studies newly cited in the FAC confirm as much: the How2Recycle Matrix expressly derives its labeling determinations from the Green Guides and, where applicable, SB 343. RJN Ex. H. And the SCS report's "at least 60 percent" conclusion tracks that same statutory access threshold. *See* FAC ¶¶ 33, 34. The Green Guides' 60 percent standard, however, applies only to unqualified recyclability claims. See 16 C.F.R. § 260.12(b)(1). Keurig's recyclability claims are obviously qualified. *Id*. ¶¶ 19, 35. That leaves SB 343 as the sole legal source for the standard Plaintiff's case is built upon. Because that standard is not enforceable against products manufactured before October 4, 2026, and not enforceable outside of California at all, Plaintiff's claims fail at their foundation.[3]

**1. SB 343 and Its Safe Harbor Provision**

SB 343 is the first law of its kind passed in the United States, which regulates recycling claims generally and the chasing arrows symbol specifically, in a more stringent manner than prior laws. Fundamentally, SB 343 prohibits recyclability advertising for packaging that does not meet the strict requirements laid out in California Public Resources Code section 42355.51. Essentially, SB 343, once enforceable, would mandate recycling advertising no longer describe what material types are *capable* of being recycled and instead only permit recycling claims based on *actual* recycling system performance and municipal collection percentages.

Specifically, under SB 343, a product may not be labeled as recyclable unless (1) the material type and form are collected by recycling programs serving at least 60 percent of the State's population and (2) is sorted and processed by large volume transfer/processing facilities serving a 60 percent proportion of recycling programs statewide. Cal. Pub. Res. Code § 42355.51(d)(2). SB 343 provides that displaying a

//

[3] Defendants contest all factual allegations concerning the alleged non-recyclability of the Pods, and whether the Pods meet the requirements of SB 343.

chasing arrows symbol, including around a RIC, or any other implication of recyclability is "deemed to be a deceptive or misleading claim" unless the product meets the above criteria. *Id*. § 42355.51(b)(1).

Recognizing that SB 343 represented a sea change in the law, the California Legislature built a critical safeguard into the statute which provides that the recyclability labeling restrictions in Section 42355.51(b)(1) "does not apply to . . . [a]ny product or packaging that is manufactured up to 18 months after the date the department publishes the first material characterization study required pursuant to subparagraph (B) of paragraph (1) of subdivision (d), or before January 1, 2024, whichever is later." *Id*. § 42355.51(b)(2)(A). This eighteen-month compliance window is not a loophole or an oversight. It was specifically established to permit companies to assess compliance with SB 343 and update packaging as needed, because of the significant change in law that SB 343 represents. *See* RJN, Ex. I (Senate Floor Analyses explaining that "[p]otentially, hundreds of companies would be required to change their labeling practices on their products…this would affect plastic products of all types, from single-use food packaging to shipping materials, toys, bags, and more.").

Under Section 42355.51(b)(2)(A), CalRecycle published its first "Material Characterization Study," on April 4, 2025, meaning SB 343's labeling restrictions apply only to products and packaging manufactured eighteen months after that date, October 4, 2026. RJN, Ex. J. CalRecycle itself specifically acknowledges the October 4, 2026, enforcement date. RJN Ex. K. Accordingly, recycling claims "pursuant to this section and [the FAL]" are barred until then. Cal. Pub. Res. Code § 42355.51(b)(1).

**2. Plaintiff's Claims Are Barred by the SB 343 Safe Harbor, Including Those Brought Under § 17580.5**

Plaintiff, aware of the SB 343 enforcement bar, attempts to plead around it by framing his claims as general consumer fraud violations without citing SB 343 by name. Rather, Plaintiff invokes the Green Guides' 60 percent threshold, a standard applicable only to unqualified recyclability claims—which is not the case here—and pairs it with a

third-party consulting firm's finding that municipal recycling programs serving at least 60 percent of U.S. consumers do not accept the Products. FAC ¶¶ 29, 34. But the Plaintiff's characterization of the claim does not determine whether the safe harbor applies. The substance of the FAC makes clear that all of Plaintiff's claims rise and fall on the recyclability standards created and governed by SB 343.

Plaintiff's attempt to frame his misrepresentation claims as violating Section 17580.5 rather than SB 343 does not avoid SB 343's safe harbor provision. Plaintiff alleges Section 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim [as defined by the Green Guides], whether explicit or implied." FAC ¶ 33. But Section 17580.5 is expressly covered by SB 343's safe harbor provision. The plain text of SB 343 states that a recyclable claim is "deemed to be a deceptive or misleading claim *pursuant to this section and Section 17580.5 of the Business and Professions Code*" unless the product meets SB 343's recyclability criteria. Pub. Res. Code § 42355.51(b)(1) (emphasis added.) And the safe harbor provision at Public Resource Code Section 42355.51(b)(2)(A) specifically applies to all conduct described in (b)(1), which includes Section 17580.5. Thus, the text of SB 343 specifically applies the safe harbor to claims brought under Section 17580.5.

Plaintiff's recyclability claims are governed by SB 343 even if Plaintiff does not specifically refer to the statute. A Central District of California court confronted this issue head on in February and held that the SB 343's safe harbor provision categorically bars these kind of claims. *Bhotiwihok v. Fairlife, LLC*, No. 2:25-CV-01650-ODW (AGRx), 2026 WL 413749 (C.D. Cal. Feb. 13, 2026). The plaintiffs in *Bhotiwihok* alleged that Fairlife's bottles were deceptively labeled as recyclable through, among other things, a "Recycle Me" statement on the label and a chasing arrows symbol. *Id.* at *1. Fairlife moved to dismiss on the ground that SB 343's safe harbor precluded the claims. The court agreed, holding that "[t]he plain language of the statute provides that Plaintiffs cannot bring a 'deceptive or misleading [recyclability] claim pursuant to this section and [the FAL]' for products and packaging manufactured up to eighteen months after publication

of the material characterization study." *Id.* at *7 (citing Cal. Pub. Res. Code § 42355.51(b)). Applying the April 4, 2025, publication date, the court found that the safe harbor extended through October 4, 2026, and that the plaintiffs' FAL claim was therefore expressly barred. *Id*. And the *Bhotiwihok* court held that Section 17580.5 itself, which is part of the FAL, is subject to the SB 343 safe harbor. The court held that the safe harbor extended through October 4, 2026, barring plaintiffs' FAL claims premised on SB 343, Section 17580.5, and the Green Guides. *Id; see also* RJN Ex. L at ¶¶ 238, 251 (*Fairlife* Complaint alleging UCL and FAL claims premised on Green Guides and Section 17580.5 violations).

The court further held that the safe harbor doctrine equally foreclosed the plaintiffs' UCL and CLRA claims predicated on the same recyclability theory, reasoning that where the Legislature has declared through specific legislation that certain conduct is permissible during a defined compliance period, courts may not permit plaintiffs to use the UCL or CLRA to "assault that harbor." *Id.* (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572, 594 (2011)). The court therefore dismissed all UCL, CLRA, and FAL recyclability claims without leave to amend. *Id.*

The operation of legislative safe harbors under California law is well settled. As the California Supreme Court explained in *Cel-Tech*, "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182.

//

//

//

**E. The Preliminary Injunction Against SB 343 Confirms That Plaintiff's Claims are Unconstitutional Under Free Speech and Due Process Principles**

Plaintiff's allegations that Defendant's recyclability claims violate consumer protection statutes are also subject to dismissal due to this District's holding that SB 343 is likely unconstitutional. In *California League of Food Producers v. Bonta*, 3:26-CV-01675-WQH-BLM, 2026 WL 2055589 (S.D. Cal. July 14, 2026) the court granted a preliminary injunction and held that the plaintiff trade associations were likely to succeed on their claims that SB 343's recyclability provisions are unconstitutionally vague under the Fourteenth Amendment and impermissibly restrict commercial speech under the First Amendment.

With respect to vagueness, the Court found that multiple provisions of SB 343 fail to provide manufacturers with adequate notice of what conduct is prohibited, including the statute's "routinely becomes feedstock" requirement, its incorporation of the Basel Convention, its reference to the evolving Association of Plastic Recyclers ("APR") Design Guide, and its requirement that packaging be "designed to ensure recyclability without defining what that means.

The vagueness concerns identified in *Bonta* similarly apply here. Plaintiff's theory of liability rests on the premise that Keurig's qualifying language is an inadequate disclosure because it does not tell consumers whether Pods are accepted in their specific communities and may mislead consumers who live in areas where programs accept #5 plastic generally but not Pods specifically. FAC ¶¶ 35–37. But Plaintiff articulates no standard by which Keurig could sufficiently qualify its Products to avoid liability. Even accepting Plaintiff's own cited studies at face value, those sources reveal wide variability in purported recycling acceptance rates for Pods depending on the methodology, geography, and facilities surveyed, leaving Keurig without a reliable or consistent benchmark against which to assess its labeling. *See* FAC ¶¶ 27–29. This is precisely the type of indeterminate standard that *Bonta* condemned: a regime that "relies substantially

on conduct outside of manufacturers' control and about which they may lack reliable information," and that leaves manufacturers to "guess which reading of the provision a judge or jury will adopt in a subsequent civil or criminal proceeding." *Bonta* at *13, *18.

The Court also held that "recyclable" claims are protected commercial speech that is at most "potentially misleading," the State failed to demonstrate that restricting recyclability claims would materially advance California's interests in improving recycling rates or reducing consumer confusion, and that SB 343's labeling ban is more extensive than necessary because less-restrictive means, such as a disclosure, could serve the State's interest.

The First Amendment concerns identified in *Bonta* independently support dismissal here. The Court observed that under the law, a manufacturer "could say 'not recyclable in some areas' but could not lawfully say, with respect to the same product, 'recyclable in some areas.'" *Id.* at *33. That is precisely what Plaintiff asks this Court to accomplish through private litigation: to penalize Keurig for including the truthful, qualified statement "Check Locally – Not Recycled in Many Communities", and to force Keurig to strip that information entirely. As the Court in *Bonta* recognized, that result would leave consumers "with less information than they would receive in the absence of" the regulatory scheme and would advance neither consumer protection nor recycling rates, the very interests Plaintiff invokes to justify his claims. *Id.* at *32.

**F. <u>Plaintiff's Unjust Enrichment Claim Fails</u>**

Plaintiff's unjust enrichment claim depends on the same alleged deceptive recyclability representations that underpin his UCL, FAL, CLRA, and negligent misrepresentation claims. Because those claims fail as a matter of law under the reasonable consumer standard, the unjust enrichment claim necessarily fails with them.

Under California law, there is no standalone cause of action for unjust enrichment. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Courts may construe such a claim as a quasi-contract claim seeking restitution, but a "restitution claim based on fraud or consumer protection claims must nonetheless be dismissed if the

plaintiff fails to sufficiently plead an actionable misrepresentation." *In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622 (9th Cir. Sept. 13, 2023). When the alleged misrepresentation is found not to be deceptive as a matter of law, no wrongful conduct could render the defendant's retention of the purchase price inequitable, and the quasi-contract claim fails for the same reason the statutory claims fail. *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021); *Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1052 (E.D. Cal. 2024).

The FAC makes this derivative character plain. Plaintiff's unjust enrichment allegations consist of nothing more than the assertion that Plaintiff and class members "conferred a benefit on Defendant by purchasing the falsely advertised Products," that Defendant "profited from their unlawful, unfair, misleading, and deceptive practices and advertising," and that it would be "unjust for Defendant to be permitted to retain the benefit" of those sales. FAC ¶¶ 99-104. Plaintiff identifies no independent basis for his unjust enrichment claim that is untethered from the deception. The claim is "entirely premised on the asserted misrepresentation." *Garza*, 760 F. Supp. 3d at 1052.

Courts in the Ninth Circuit applying California law have consistently dismissed unjust enrichment claims on precisely these facts. *See, e.g.*, *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (dismissing unjust enrichment claim where plaintiff failed to identify any actionable deception or independent theory apart from failed statutory consumer protection claims); *Hawkins v. Shimano North America Bicycle Inc.*, 729 F. Supp. 3d 989, 1029 (C.D. Cal. 2024) (unjust enrichment claim failed because it was premised on the same factual allegations as dismissed consumer claims); *Kachuck Enters. v. Mission Produce, Inc.*, No. 2:25-CV-01523-AH-JCX, 2026 WL 216475, at *8 (C.D. Cal. Jan. 22, 2026) (dismissing unjust enrichment claim as duplicative).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's FAC should be dismissed without leave to amend.

Respectfully submitted,

Dated: July 28, 2026

GREENBERG TRAURIG, LLP

By: */s/Willis Wagner*

Willis Wagner
Tamara Wiesebron
Patrick Fortelka

Attorneys for Defendant
KEURIG GREEN MOUNTAIN, INC.