Manfred P. Muecke (SBN 222893)
**Manfred, APC**
4225 Executive Square, Suite 600-6051
La Jolla, CA 92037
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com
*Attorneys For Plaintiff*

| | |
|---|---|
| RYAN DIXON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | Case No. 3:26-cv-02172-LL-BJW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Hon. Linda Lopez<br>Date: September 22, 2026<br>Place: Courtroom 14B<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... i

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

LEGAL STANDARDS .......... 5

ARGUMENT .......... 6

I. RES JUDICATA DOES NOT BAR PLAINTIFF'S AND CLASS CLAIMS 6

A. Plaintiff Could Not Have Presented The Instant Claims In The Smith Settlement Because The Nucleus Of Facts and Time Period Are Different .......... 7

B. The Smith Release Does Not Give Keurig Unfettered Discretion To Engage In Post Release Deceptive Recycling Claims And Does Not Bind Plaintiff From Asserting His Claims .......... 9

II. KEURIG'S REQUEST TO STRIKE CLASS ALLEGATIONS ARE IMPROPER AT THE PLEADING STAGE AND SHOULD BE DENIED .......... 10

III. WHETHER A REASONABLE CONSUMER IS DECEIVED BY KEURIG'S MARKETING IS FOR A FACT-FINDER TO DETERMINE .......... 12

A. Defendants' Reliance on Ninth Circuit Precedent Is Misplaced .......... 13

B. Plaintiff's #5 Plastic Theory is Plausibly Alleged .......... 14

C. Plaintiff's Cited Studies Support His "Not Recyclable" Theory .......... 16

IV. SB 343's SAFE HARBOR DOES AND CAN NOT BAR PLAINTIFF'S CLAIMS .......... 19

A. SB 343 Safe Harbor Is Confined To Claims Under SB 343 And The Amendments to Cal. Civ. Code 17580.5 .......... 20

B. SB 343 Has Been Preliminarily Enjoined and Defendant Likely Cannot Utilize A Safe Harbor .......... 22

V. THE PRELIMINARY INJUNCTION AGAINST SB 343 DOES NOT ESTABLISH THAT PLAINTIFF'S CLAIMS ARE UNCONSTITUTIONAL 23

VI. PLAINTIFF ARE ENTITLED TO EQUITABLE RELIEF .......... 24

CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Astiana v. Hain Celestial Grp, Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................................................................24

*Baesel v. Mut. of Omaha Mortg., Inc.*, No. 20CV0886 DMS(AGS), 2020 WL 12675283 (S.D. Cal. Oct. 20, 2020) ..............................................11, 12, 14

*Ballew v. Huuuge, Inc.*,
No. CV 23-4324-GW-AGRX, 2025 WL 4941352 (C.D. Cal. Dec. 12, 2025)......9

*Bargetto v. Walgreen Co.*,
2022 WL 18539360 (N.D. Cal., Dec. 19, 2022)................................................14

*Bates v. Bankers Life & Casualty Co.*,
848 F.3d 1236 (9th Cir. 2017) ..........................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................................5

*Bhotiwihok v. Fairlife, LLC*, No. 2:25-CV-01650-ODW (AGRX), 2026 WL 413749 (C.D. Cal. Feb. 13, 2026)..................................................................21

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ...........................................................................13

*California League of Food Producers v. Bonta*,
No. 3:26-CV-01675-WQH-BLM, 2026 WL 2055589
(S.D. Cal. July 14, 2026) ..................................................................................19

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) .............................................................................7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163, 973 P.2d 527 (1999)................................................................21

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*,
447 U.S. 557 (U.S. Sup. Ct., 1980) ...................................................................23

*Chancy v. Fossil Grp., Inc.*,
No. 25-CV-1566-AJB-DEB, 2026 WL 1224121 (S.D. Cal. May 5, 2026) ...........6

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ...........11

*Curtis v. 7-Eleven, Inc.*,
2022 WL 4182384 (N.D. Ill., Sept. 23, 2022) ...........15

*Della v. Colgate-Palmolive Co.*,
No. 23-CV-04086-JCS, 2024 WL 457798 (N.D. Cal. Feb. 6, 2024) ...........15, 16

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ...........6

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ...........12, 14, 21

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...........6

*Falcone v. Nestle USA, Inc.*,
No. 3:19-CV-723-L-DEB, 2024 WL 4868298 (S.D. Cal. Sept. 26, 2024) ...........23

*Fraley v. Batman*,
638 F. App'x 594 (9th Cir. 2016) ...........9

*Garza v. Spectrum Brands Pet LLC*,
760 F.Supp.3d 1039 (E.D. Cal. 2024) ...........25

*Grant House v. National Collegiate Athletic Association*,
545 F.Supp.3d 804 (N.D. Cal., 2021) ...........10

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
250 F.Supp.3d 438 (N.D. Cal. 2017) ...........22

*Gudgel v. Clorox Company*,
514 F.Supp.3d 1177 (N.D. Cal. 2021) ...........25

*Hernandez v. Radio Sys. Corp.*,
No. EDCV221861JGBKKX, 2023 WL 4291829 (C.D. Cal. May 10, 2023) ......16

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ..................7, 10

*In re Apple Processor Litig.*,
No. 18-CV-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022) ................25

*Johnson-Jack v. Health-Ade LLC*,
587 F.Supp.3d 957 (N.D. Cal. 2022) ..................16

*Kasky v. Nike, Inc.*,
27 Cal.4th 939 (Cal. 2002) ..................24

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ..................6

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ..................13, 14

*Mpoyo v. Litton Electro-Optical Sys.*,
430 F.3d 985 (9th Cir. 2005) ..................8

*Norse Straits LLC v. SHM Cabrillo Isle LLC*,
No. 3:25-CV-03259-H-BJW, 2026 WL 497405 (S.D. Cal. Feb. 23, 2026).........24

*Rael v. Children's Place, Inc.*,
No. 16-CV-370-GPC-BGS, 2024 WL 1444980 (S.D. Cal. Apr. 3, 2024).............8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ..................10

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*,
428 F.3d 831 (9th Cir. 2005) ..................8

*Smith v. Keurig Green Mountain, Inc.*,
No. 18-CV-06690-HSG, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) .......1, 2, 9

*Whiteside v. Kimberly Clark Corp.*,

108 F.4th 771 (9th Cir. 2024) ........................................................ 12, 13

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ........................................................ 12, 13

*Wojciechowski v. Kohlberg Ventures, LLC*,
923 F.3d 685 (9th Cir. 2019) ........................................................ 10

**STATUTES**

CAL. BUS. & PROF. CODE §17580.5 ........................................ 15, 20, 22

CAL. PUB. RES. CODE §42355.51 ........................................ 20, 21,22

**REGULATIONS**

16 C.F.R. § 260 ........................................................ 2

16 C.F.R. § 260.12 ........................................ 13,17, 18, 19, 20

**OTHER AUTHORITIES**

SENATE BILL 343 ........................................................ 20

Plaintiff Ryan Dixon, individually and on behalf of those similarly situated, respectfully submits this opposition ("Opposition") to Defendant Keurig Green Mountain, Inc.'s ("Keurig") Motion to Dismiss ("MTD") Plaintiff's First Amended Class Action Complaint ("FAC") as well as Defendant's Motion To Strike Class Allegations ("MTS"). This Opposition is filed concurrently with Plaintiff's Opposition to Defendant's Request For Judicial Notice ("RJN").

**PRELIMINARY STATEMENT**

In its MTD, MTS, and accompanying RJN, Keurig offers a wide ranging array of defenses to Plaintiff's FAC including a heavy effort to shoehorn Plaintiff's claims into a previous settlement concerning Keurig's recycling claims of its K-Cup pods ("Pods") for a different time period and marketing representation distinguishable from the class period and representations at issue in this matter. MTD, pgs. 11-15. Then, Defendant attempts to argue to no avail that the reasonable consumer standard is somehow not met by Plaintiff's well-pled allegations concerning Keurig's K-Cup pod recycling claims set forth on K-Cup pod packaging. MTD, pgs. 15-22 Similarly, Keurig attempts to bring Plaintiff's FAC within the safe harbor of a now-enjoined SB CA 343 statute that is not cited nor relied upon in Plaintiff's FAC, and then deftly argues that the enjoinment of the SB CA 343 functions as a free speech defense. MTD, pgs. 23-28 Lastly, Keurig seeks to evade Plaintiff's unjust enrichment claim. MTD, pgs. 28-29

All of these arguments proffered by Keurig fail to pass muster for the following reasons as discussed more fully herein:

First, res judicata does not lie where the class period and factual predicate differ from the settlement reached in *Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) ("*Smith* Settlement"). This is true even if the factual predicate and the challenged conduct may have similarities to the previous matter. Plaintiff's action poses no collateral attack on the

*Smith* settlement and Keurig's argument otherwise is unavailing.

Secondly, Keurig overstates the reach of the *Smith* settlement release as a future-proofing mechanism of claims made beyond the *Smith* class period and representations at issue in *Smith*, 2023 WL 2250264. MTD, pgs. 11-15 Plaintiff has not pled he is a member of the *Smith* settlement despite Keurig baldly asserting that Plaintiff must affirmatively do so without any supporting caselaw. *Id*., pg. 12

Keurig's MTS similarly fails to carry the day as Plaintiff has clearly pled a prospective class definition that would diverge from the class period and product representation at issue in the *Smith* Settlement. MTD, pgs. 15-16. Any class management issues are best resolved at a future motion for class certification after the benefit of class-related discovery.

Plaintiff and the Class clearly meet the reasonable consumer pleading standard, especially when a reasonable consumer would be compelled to undertake independent investigation to determine the recyclability of the Pods at issue. Despite Keurig's strident arguments otherwise, there is hardly a clear pathway to recycle #5 plastics, and Keurig's attempt to take issue with Plaintiff's cited studies is not an issue that is typically resolved at the pleadings stage. MTD, pgs. 16-22

Next, Keurig's attempt to use Senate Bill 343 ("SB 343") as a defense falls flat as Keurig valiantly attempts to cram it into Plaintiff's FAC when the FAC makes no such reference to SB 343. MTD, pgs. 23-27 A reasonable reading of the SB 343 text does not expand the safe harbor beyond the contours of the statute. Plaintiff's claims go to violations of the Federal Trade Commission Guides for the Use of Environmental Marketing Claims Green Guides, 16 CFR § 260, *et seq*. ("Green Guides") concerning the sufficiency of the qualification of Keurig's recyclability claims as well as whether recycling claims can stand if the Pods can be feasibly recycled for re-use under established recycling programs. FAC, pgs. 16-17 Critically, the effect and application of SB 343 safe harbor defense is fairly called

into question following this District's recent enjoinment of the enforcement of SB 343 which undercuts the application of this defense.

Keurig then pivots to argue that the enjoinment of SB 343 provides a right to commercial speech in the face of alleged violations of consumer protection statutes. MTD, pgs. 28-29. Such argument is dead on arrival. To find otherwise would make a mockery of consumer protection statutes and give carte blanche to entities such as Keurig to freely deploy deceptive marketing and packaging representations to consumers under the guise of protected commercial speech.

Lastly, Plaintiff sufficiently alleges an unjust enrichment cause of action that courts have likened to a quasi-contract claim and is consistent with Plaintiff's causes of action concerning Keurig's misleading recyclability claims of K-Cup pods.

Plaintiff's FAC firmly alleges that Defendant's recyclability representations have misled reasonable consumers such as Plaintiff and the proposed Class. This Court should decline Keurig's invitation to apply a safe harbor or previous judgment and other proffered defenses that do not defeat Plaintiff's claims and proposed class definition at the pleading stage. These and other defenses would be better considered in the context of a motion for class certification or motion for summary judgment at the close of discovery with a full record of evidence before the Court. As such, Keurig's MTD and MTS should be denied in their entirety. Alternatively, Plaintiff should be permitted leave to file a Second Amended Complaint.

## FACTUAL BACKGROUND

Keurig manufactures, sells, and markets single-use plastic coffee pods nationwide through online marketplaces and retail stores. FAC, ¶1 Keurig both labels and advertises its Pods as "Recyclable" despite knowing that the majority of consumers do not have access to recycling programs that will accept and process the Products. *Id.*, ¶2

Plaintiff purchased these Pods and reasonably believed they were recyclable,

relying on Keurig's marketing, packaging, advertising, and labeling. FAC, ¶¶3, 8-9 Plaintiff suffered economic injury from purchasing a Product that did not have the environmental benefits that were marketed to consumers. *Id*.

Plaintiff's action challenges Keurig's deceptive practice of marketing its K-Cup pods as "Recyclable" for the time period following the *Smith* Settlement concerning similar but ultimately distinct misleading recycling representations on the Pods. *Id*., ¶¶16-19. These representations are intended to influence purchasing decisions by directly appealing to consumers who value sustainability and are willing to pay higher prices for environmentally friendly products. *Id*., ¶22 Keurig aggressively markets the purported recyclability of their Products, including displaying the word "Recyclable" in capital letters alongside a chasing-arrows recycling symbol on packaging materials, websites, online retail, and social media pages. *Id*., ¶18 Only in small print is the disclaimer stating "Check Locally – Not Recycled in Many Communities." *Id*., ¶19 This disclaimer is not only visually difficult to read, but is separated by a different-colored background from the larger "Recyclable" label. *Id.,* ¶¶19, 35 This disclaimer fails to disclose that Pods are not recyclable in most communities as the shape, size, and design of the Pods are incompatible with the majority of recycling centers nationwide. *Id*., pgs. 13-14, ¶¶27-28; ¶37 [1]

Reasonable consumers understand the word "Recyclable" accompanied by a chasing-arrows symbol to mean that a product will actually be recycled if placed in a typical recycling bin. FAC, ¶23 Consumers reasonably interpret Keurig's labeling to mean that the Pods are recyclable through standard recycling programs. FAC,

[1] Plaintiff's FAC contains a paragraph numbering error starting at paragraph 27 on page 13 of the FAC following paragraph 29 on pages 12-13 of the FAC. This had the effect of re-setting the numerical sequence of paragraphs from paragraph 27 on page 13. Plaintiff apologizes to the Court and Defendant for this inadvertent typographical error. Dkt. No. 7.

¶22-25

K-Cup pods are manufactured using polypropylene #5, a material that is technically recyclable, but rarely recycled in practice. *Id.*, ¶2; pgs. 11-12, ¶27. Although K-Cup pods are manufactured using this technically recyclable material, most consumers are unable to access recycling systems that will actually accept and recycle the Pods. FAC, pgs. 14-15, ¶¶28-32 Despite Keurig's claim that their Pods are recyclable because they are made from this technically recyclable material, the large majority of recycling facilities do not accept or ultimately process K-cup pods due to their small size, irregular shape, multi-material construction, contamination concerns, and unfavorable economic outcomes. FAC, pgs. 13-14, ¶27 Keurig's deceptive recycling claim leads consumers to believe the Pods they are purchasing will actually be recycled. FAC, ¶¶22-23 Recent studies have found that polypropylene single-use pods are widely rejected by recycling programs, with little evidence available anywhere of the pods being recycled. FAC, pgs. 11-12, ¶27 GreenBlue, the founder of the most recognized on-package recycling labeling system in the United States, determined the pods to be "not yet recyclable." FAC, pg. 12, ¶28

Plaintiff has proposed a national class and in the alternative, a California subclass of K-Cup pod purchasers who are not members of the previous *Smith Settlement* class. FAC, ¶¶39-40. Plaintiff also reserved the right to amend the proposed Class definitions as prudent based upon investigation and discovery. FAC, ¶41.

## LEGAL STANDARDS

To proceed beyond a Rule 12(b)(6) motion, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This requires that "…the court must construe the complaint in the light most favorable to

the plaintiff, taking all [his] allegations as true and drawing all reasonable inferences from the complaint in [his] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)(other citations omitted)

The Court's review and evaluation of a Rule 12(b)(6) motion is generally limited to "consider[ation] of allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)(other citations omitted).

Leave to amend a complaint is to be "freely given when justice so requires" and "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Chancy v. Fossil Grp., Inc.*, No. 25-CV-1566-AJB-DEB, 2026 WL 1224121, at *2 (S.D. Cal. May 5, 2026) citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–1052 (9th Cir. 2003) (other citations omitted)

## ARGUMENT

### I. RES JUDICATA DOES NOT BAR PLAINTIFF'S AND CLASS CLAIMS

From the jump, Keurig expends much argument towards its claim that the *Smith* Settlement forecloses the claims of Plaintiff and the prospective Class claims on the basis of res judicata and the scope of the release language in the *Smith* Settlement. MTD, pgs. 11-15 Yet, Plaintiff's claims are clearly distinct in time, scope, and manner from the *Smith* Settlement and pose no collateral attack on the *Smith* Settlement. Similarly, the *Smith* Settlement release is properly cabined to the class period and claims in the *Smith* matter. What the *Smith* Settlement does not do is "future-proof" Plaintiff's and other proposed Class member claims against Keurig outside of the confines of the *Smith* Settlement terms and class period.

A court may generally find res judicata applicable to claims "[w]hen the

earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies." *California v. IntelliGender, LLC*, 771 F.3d 1169, 1176 (9th Cir. 2014) (other citations omitted) If there is insufficient privity between the parties, then res judicata may not be found. Id. Further, the identical factual predicate that supported claims in a previously settled matter must be present in a subsequent action for res judicata to be found to apply to and defeat a present action. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citations omitted)

A. Plaintiff Could Not Have Presented The Instant Claims In The Smith Settlement Because The Nucleus Of Facts and Time Period Are Different

As an initial matter, Plaintiff's claims do share some similarities with the claims raised in *Smith* as they generally relate to the recycling misrepresentations made by Keurig as they relate to the labeling of Pods. However, the similarities end there as Plaintiff's allegations concern Keurig's representations made well after and different from the *Smith* class period.

Plaintiff does not claim to be a member of the *Smith* Settlement class. Any attempt by Keurig to imply otherwise should be disregarded as an attempt to recast the allegations of Plaintiff's FAC. Plaintiff plainly seeks injunctive relief and damages based on current Keurig recycling claims within a time period distinct from the injunctive and monetary relief that was provided to the *Smith* class.

Pointedly, the nucleus of facts in Plaintiff's FAC is substantially different than the *Smith* Settlement claims against Keurig. Plaintiff's claims concern the current package representations that were merely prospective in nature in the *Smith* Settlement. While the purported injunctive relief in the form of prospectively revised packaging labels was provided as part of relief afforded to the *Smith* Class and the corresponding release, Plaintiff and the proposed Class in this matter may challenge

these current K-Cup pod recycling claims as applied to K-Cup pod products. *See e.g. Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 848–849 (9th Cir. 2005) (Ruling that res judicata didn't apply to a lawsuit where the plaintiff was not a member of the previous settlement class)(Other citations omitted)

Keurig's reliance on *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985 (9th Cir. 2005), is misplaced. MTD, pg. 13 In *Mpoyo*, both actions arose from the same employment relationship and the same termination, and the later claims could have been litigated in the first action. In fact, the *Myopo* plaintiff had unsuccessfully sought to add those claims by amendment in the initial complaint to no avail. *Myopo*, 430 F.3d at 986–88. The same nucleus of facts that drove the opinion in *Myopo* simply isn't present in Plaintiff's FAC.

Plaintiff's claims clearly could not have been litigated in *Smith* because Plaintiff's claims go to current recycling representations that did not exist during the *Smith* litigation. Plaintiff was not a member of the *Smith* class, and his claims arise from Keurig's post-*Smith* representations, subsequent purchases, a new time period, and resulting new injuries. The FAC expressly limits the proposed classes to purchasers after the effective date of the *Smith* Settlement and pointedly, purchasers who were not members. FAC, ¶40. Although both cases concern K-Cup recyclability, they do not arise from the same transactional nucleus of facts.

Similarly, in *Rael v. Children's Place, Inc.*, No. 16-CV-370-GPC-BGS, 2024 WL 1444980 (S.D. Cal. Apr. 3, 2024), the court considered a subsequent consumer class action alleging the same false-advertising scheme, causes of action, and relief as an earlier settled class action. In finding res judicata could not apply, the court observed "…[t]he alleged misconduct in *Gonzalez* is distinct from the alleged misconduct in *Rael* in time…It is therefore not the same claim and not based on the same facts, even though the alleged misconduct itself is virtually identical.." *Id*. at *7. The same principle applies here. Plaintiff was not a member of the *Smith* class

because he did not purchase the Products during the *Smith* class period and thus can readily bring his claims based on post-*Smith* K-Cup pod recycling misrepresentations.

B. The Smith Release Does Not Give Keurig Unfettered Discretion To Engage In Post Release Deceptive Recycling Claims And Does Not Bind Plaintiff From Asserting His Claims

Keurig further suggests that the *Smith* court approval of the injunctive relief somehow insulates it from all future challenges concerning the new recycling label representations as applied to current K-Cup pod packaging. MTD, pgs. 14-15. The *Smith* Settlement release is pointedly limited to *Smith* class members and makes no representation as to whether the injunctive relief would, in of itself, meet any reasonable consumer standard as applied under CLRA, FAL, and UCL. *Smith*, 2023 WL 2250264, at *3.

Courts generally avoid the merits and legality of proposed relief in a settlement unless the terms of the settlement may be a clear violation of the law. To this point, a "district court abuses its discretion in approving a settlement only if the agreement sanctions '*clearly* illegal' conduct." *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (emphasis in original) (other citations omitted). As such, district courts may approve settlement agreements even if the subject matter of the settlement agreement may raise or encompass unsettled legal issues. *Ballew v. Huuuge, Inc.*, No. CV 23-4324-GW-AGRX, 2025 WL 4941352, at *8 (C.D. Cal. Dec. 12, 2025) (citing *Fraley* , 638 Fed.Appx. at 597 (9th Cir. 2016) (other citations omitted)

The *Smith* court approved the settlement release for the *Smith* class members without any observation as to the merits of the relief other than to note it was consistent with the litigation objectives of the operative *Smith* complaint. *Smith,* 2023 WL 2250264, *6 (N.D. Cal. Feb. 27, 2023) However, the scope of the *Smith*

Settlement does not reach the factual predicate nor the proposed class time period set forth in Plaintiff's FAC to support a preclusive effect. Indeed, the *Smith* Settlement covers claims set forth in a class period that ended August 8, 2022. *Id.*, *2 The *Smith* Settlement cannot be reasonably read to increase the scope and breadth of the release beyond what was set forth in its terms. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685,689-691 (9th Cir. 2019)

Keurig's citation of *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) misses the mark. The *Reyn* plaintiffs were found to have collaterally attacked a previous settlement where the *Reyn* price fixing claims fell squarely within the ambit of the previous settlement that was concurrently struck in a related case where the *Reyn* plaintiffs appeared as objectors at the settlement hearing. *Id.*, 744-748. Plaintiff was not a participant in the *Smith* Settlement and Plaintiff's claims and proposed class definition clearly fall outside the parameters of the *Smith* Settlement which renders the *Reyn* court's reasoning inapplicable here.

At bottom, "a settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the ***identical factual predicate*** as that underlying the claims in the settled class action.'" *Grant House v. National Collegiate Athletic Association*, 545 F.Supp.3d 804, 819 (N.D. Cal., 2021), citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-591 (9th Cir. 2010) (emphasis retained from citation) Plaintiff's claims simply could not have been brought during the *Smith* class period because the precise recycling misrepresentations on K-Cup packaging at issue in Plaintiff's FAC did not and could not exist during the *Smith* class period.

## II. KEURIG'S REQUEST TO STRIKE CLASS ALLEGATIONS ARE IMPROPER AT THE PLEADING STAGE AND SHOULD BE DENIED

Motions to strike class allegations at the pleading stage are regularly denied

and Keurig's attempt to do so here should fare no better. MTD, pgs. 15-16 As courts have routinely observed, a motion for class certification is the logical and preferred context to evaluate any defenses to the certifiability of a proposed class as "[a] decision to grant a motion to strike class allegations ... is the functional equivalent of denying a motion to certify a case as a class action." *Bates v. Bankers Life & Casualty Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). Striking class allegations prior to a formal certification motion is generally disfavored because the factual record is usually undeveloped. See *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (stating "it is in fact rare to [strike class allegations] in advance of a motion for class certification," and holding "it is premature to determine if this matter should proceed as a class action" because discovery had not begun); See also *Baesel v. Mut. of Omaha Mortg., Inc.*, No. 20CV0886 DMS(AGS), 2020 WL 12675283, at *1 (S.D. Cal. Oct. 20, 2020) (denying a motion to strike class allegations finding "it is not clear from the Complaint 'that the class claims cannot be maintained.'")(citation omitted)

Keurig moves this Court to prematurely dispense with class allegations, well before any discovery has been undertaken and Plaintiff's prospective motion for class certification is before the Court. MTD, pgs. 15-16 Keurig ostensibly ties its motion to its attempt to unduly conflate Plaintiff's current claims and the putative class claims with the *Smith* Settlement class claims. *Id*. As discussed exhaustively herein, Plaintiff's claims go directly to post *Smith* settlement labeling representations set forth on K-Cup pod packaging that is clearly distinct from the time period and labeling at issue in the *Smith* Settlement. As such, the divergence in class periods, prospective class membership, and labeling subject matter is not a proper basis for Keurig's motion to strike and such arguments are better entertained a motion for class certification following discovery.

**III. WHETHER A REASONABLE CONSUMER IS DECEIVED BY KEURIG'S MARKETING IS FOR A FACT-FINDER TO DETERMINE**

Keurig offers three distinct but ultimately lacking arguments that reasonable consumers would not be deceived by its K-Cup pod packaging. The asterisk on its K-Cup pod package labeling that links to the qualifying statement: "Check locally – Not Recycled in Many Communities" does nothing to dispel the misleading nature of the recycling claims and wrongly puts the onus on a consumer to conduct research beyond the product label itself. MTD, pgs. 16-20. Next, Keurig offers a baseless and self-serving perspective about what recycling Plastic #5 products would mean to a reasonable consumer which merely amounts to a re-write of the narrative of Plaintiff's FAC. *Id.,* pgs. 20-22 Similarly, Keurig's misguided interpretations of Plaintiff's cited studies do nothing to undercut Plaintiff's citation to them and Keurig's argument otherwise amounts to a defense better evaluated by a fact-finder. *Id*., pgs. 22-23

"California's UCL, FAL and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers. Those laws prohibit not only false advertising, but also advertising that is 'either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' " *Whiteside v. Kimberly Clark Corp*., 108 F.4th 771, 777 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008)) The reasonable consumer standard is a test under which a plaintiff must sufficiently allege that members of the public are "likely to be deceived" by showing "…a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.' " *Id*., at 777-778 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (other citations omitted). "A front label is ambiguous when reasonable consumers would necessarily require more

information before reasonably concluding that the label is making a particular representation." *Id.* at 781. The question of whether a business practice is deceptive "…will usually be a question of fact not appropriate for decision [at the pleadings stage.]" *Whiteside*, *Id.*, 108 at 778 (citing *Williams*, 552 F.3d at 938-939) "Dismissal is appropriate only if the plaintiff 'could [not] plausibly prove that a reasonable consumer would be deceived'". *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025) (citing *Williams*, 552 F.3d at 939-940)

A. Defendants' Reliance on Ninth Circuit Precedent Is Misplaced

Despite its strenuous assertions otherwise, the asterisk and qualifying statement on K-Cup pods packaging hardly resolves any ambiguity and instead, injects further consumer confusion. Keurig's reliance on *Whiteside* and *McGinity v. Procter & Gamble Co.,* 69 F.4th 1093 (9th Cir. 2023) misses the mark. Neither holds that the mere presence of an asterisk or qualifier defeats a deception claim.

*Whiteside* is materially distinguishable. There, "plant-based wipes*" was qualified on the front label by the specific disclosure "*70%+ by weight," which precisely quantified the claim and was consistent with the Green Guides' recommended method for qualifying environmental representations. *Id*. at 784–85. Here, "Check Locally—Not Recycled in Many Communities" provides no comparable disclosure of the actual limitations on K-Cup pod recycling. The FAC alleges that programs serving at least 60% of consumers do not accept K-Cups and that the qualifier fails to convey the extent of those limitations. FAC ¶¶ 34–37. Unlike the qualifier in *Whiteside*, Plaintiff alleges that Keurig's qualifier itself fails to comport with the Green Guides, which provide that recyclability claims may be deceptive where a product's size, shape, or other attributes significantly limit acceptance by recycling facilities. 16 C.F.R. § 260.12(a), (d).

*McGinity* is likewise distinguishable. There, the "Nature Fusion" product at issue made no concrete representation about the product's ingredients and was

inherently ambiguous, permitting consideration of other packaging. *McGinity*, 69 F.4th at 1098–99 (9th Cir. 2023). Here, "Recyclable K-Cup® Pods," reinforced by the chasing-arrows symbol, makes a concrete environmental representation. FAC ¶ 18. *McGinity* itself recognizes that where a front-label representation is deceptive, "'the presence of fine print revealing the truth is insufficient to dispel that deception.'" *McGinity*, 69 F.4th at 1098 (citing *Ebner*, 838 F.3d at 966.)

Notably, the presence of an asterisk does not cure the alleged deception because the qualifier "Check Locally-Not Recycled in Many Communities" does not disclose that the K-Cup pods are essentially not recyclable through ordinary municipal recycling systems. Rather, it reinforces the reasonable yet ultimately misguided impression that Pods are generally recyclable via curbside pickup, subject only to local variations in availability. See e.g. *Bargetto v. Walgreen Co.*, 2022 WL 18539360, *5 (N.D. Cal., Dec. 19, 2022) ("When a complaint alleges consumer environment claims brought pursuant to the UCL and CLRA, a reasonable consumer could find a manufacturer's representation of recyclability untruthful, deceptive, or misleading, despite the presence of disclaiming language that the product was not recyclable in all communities and the directive to 'check locally' to determine recyclability at local municipal recycling facilities.")(citation omitted)

B. Plaintiff's #5 Plastic Theory is Plausibly Alleged

Keurig embraces a tortured interpretation of recyclability to support its defense that K-Cup pods meet a "capable of being recycled" standard to apply to a reasonable consumer perspective of whether a product may be recycled. MTD, pgs. 20-22.

Keurig relies heavily upon *Curtis v. 7-Eleven*, 2022 WL4182384 (N.D. Illinois, E. Div., Sept. 13, 2022), and *Swartz v. Coca Cola*, 2022 WL17881771 (N.D. Cal., Nov. 18, 2022) to support its theory of a lower threshold of recyclability as a pervasive concept that the Court should adopt. MTD, pg. 21. These cases are

unavailing here. The *Curtis* court took issue with the plaintiff's claims concerning an array of products with varying recycling representations of styrofoam and plastic goods and relevant RIC labels under Illinois consumer protection laws to find that such goods were capable of being recycled despite not being a practical option to do so. *Curtis*, 2022 WL 4182384, *14-17 (N.D. Ill., Sept. 23, 2022). In *Swartz*, the court dismissed Plaintiff's claims concerning the 100% recyclability of plastic coke bottles under the "capable of being recycled" standard and also found it inconsistent with the FTC Green Guides and Cal. Bus. & Prof. Code §17580.5 standards. *Swartz*, 2022 WL17881771, at *2.

However, the prominence of a recycling claim has to mean something beyond a purely theoretical definition of recycling and to that end, these cases and similar defenses proffered by Keurig were recently addressed in *Della v. Colgate-Palmolive Co.*, No. 23-CV-04086-JCS, 2024 WL 457798 (N.D. Cal. Feb. 6, 2024). In *Della*, the court upheld plaintiff's challenges to the recycling claims of toothpaste tubes at the pleadings stage by finding plaintiff had plausibly pled the recycling claims concerning toothpaste tubes were deceptive and misleading. *Id.*, at *23-25 Pointedly, the *Della* court addressed the claims in the *Swartz* matter went to guarantees concerning the 100% recycling claims of plastic bottles. *Id.*, *20 The *Della* court found the *Curtis* court actually did find certain products at issue alleged to be misleadingly labeled as recyclable as plausible claims. *Id.*, *22 ("As discussed above, Plaintiffs' theory here is based on intrinsic characteristics of the Products that prevent it from being recycled. Indeed, the allegations here that recycling facilities are unable to distinguish the "recyclable" tubes from the non-recyclable tubes and therefore cannot separate them for recycling is similar to the allegations in *Curtis* that the court found were sufficient to state a claim as to the unmarked products.")

Critically, the *Della* court found that consumers are not to be tasked with conducting extensive research to determine the viability of a recycling claim on a

common consumer product. *Id*., at *23 ("…[C]ourts are generally reluctant to charge a reasonable consumer with the obligation of reviewing product websites or other written product materials before purchasing the product."); see also *Hernandez v. Radio Sys. Corp.*, No. EDCV221861JGBKKX, 2023 WL 4291829, at *8 (C.D. Cal. May 10, 2023) ("The Court rejects the notion that…as an empirical matter, reasonable consumers engage in exhaustive research before purchasing items…")

Similar to *Della*, Plaintiff sufficiently alleges a reasonable consumer would be misled by Keurig's claims of recyclability and moreover, Plaintiff grounds these allegations with the difficulties a reasonable consumer encounter when attempting to recycle K-Cup pods in generally available recycling facilities.

C. Plaintiff's Cited Studies Support His "Not Recyclable" Theory

Keurig takes umbrage with Plaintiff's cited studies as somehow deficient and thus, serve to support its motion to dismiss. MTD, pgs. 22-23. Not so. As an initial matter, Keurig's attacks on Plaintiff's cited studies go to the weight and credibility of evidence, not to the legal sufficiency of Plaintiff's pleading under Rule 12(b)(6). Plaintiff's reliance on the Greenpeace report, How2Recycle Decision Matrix, and SCS Engineers report sufficiently supports the allegation that municipal programs serving at least 60 percent of U.S. consumers do not accept the Pods. That Keurig may take issue with some aspects of the cited reports does not undermine the general thrust of the studies supporting Plaintiff's more than plausible claims against Keurig concerning the recyclability of its K-Cup products. *See e.g. Johnson-Jack v. Health-Ade LLC*, 587 F.Supp.3d 957, 970 (N.D. Cal. 2022) (Finding the scientific studies cited by plaintiff supported allegations despite some inconsistency with the complaint).

The fact that some small percentage of facilities may accept K-Cups does not defeat Plaintiff's theory, but rather, it confirms it: the very existence of limited and inconsistent acceptance across facilities is what makes the unqualified 'Recyclable'

primary claim misleading to reasonable consumers.

Keurig concedes that How2Recycle classifies packaging as "Not Yet Recyclable" when recycling access is below 20%. MTD, pg. 22. Yet, Keurig still maintains that because "sub-20%" is not zero, the Products are conceivably recyclable in some communities. But the Green Guides note a product "should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program" for reuse or use in manufacturing another item. 16 C.F.R. § 260.12(a). The Green Guides further recognize that recyclability claims may be deceptive where a product's size, shape, or other attribute significantly limits acceptance of the product or package by recycling facilities. *Id*. § 260.12(d). The relevant inquiry is whether the Products are actually capable of collection and recovery through established recycling programs. How2Recycle's classification of single-use pods as "Not Yet Recyclable" because access falls below 20% supports, rather than defeats, Plaintiff's allegations that Keurig's prominent "Recyclable" representation is misleading. FAC pg. 12, ¶ 28.

Keurig similarly misconstrues the SCS Report by selectively citing isolated survey responses while ignoring the Report's findings and conclusions that support the FAC. MTD, pgs. 22-23 Keurig emphasizes that four of seventeen respondents accepted K-Cups and that 59% accepted Plastic #5 generally. *Id*. However, SCS expressly distinguishes acceptance of Plastic #5 from actual K-Cup recyclability: only 20% of respondents explicitly accepted K-Cups, and several facilities that accepted Plastic #5 advised consumers not to recycle K-Cups because of their size and mixed-material construction. See SCS Report at 7; RJN Ex. F, pg. 7 Moreover, the four facilities Keurig cites accepted K-Cups subject to cleaning and separation requirements, while respondents reported that such consumer preparation is unlikely to occur at scale. *Id*. Consistent with the Green Guides' focus on whether a product

can actually be collected, separated, and recovered through established recycling programs, 16 C.F.R. § 260.12(a), (d), SCS concluded that K-Cups are "not typically accepted for recycling in the United States," that programs serving 60% or more of consumers do not accept them as placed, and that "…'recyclable' claims overstate real-world outcomes." *Id.* at 10.

Lastly, Keurig's misleadingly asserts that the results of Greenpeace's survey are unreliable because it was conducted by volunteers and Greenpeace only received data from about one-third of facilities surveyed. MTD, pg. 23

First, the survey was performed and verified by technically qualified volunteers, two registered professional chemical engineers and a recycling industry expert. RJN, Ex. G, pg. 52. Next, the Greenpeace Report notes that direct Material Recovery Facility ("MRF") disclosures were merely just the first source consulted as Greenpeace also reviewed recycling guidance from the cities and counties directing materials to the MRF and, if necessary, guidance issued by the MRF owner itself. *Id.*, pgs. 52, 54 Where textual and photographic guidance conflicted, it counted every item identified by either source as accepted "to avoid bias." *Id.*

Greenpeace treats acceptance as only the "first step" in recycling and separately evaluates whether collected plastics are actually sorted and reprocessed. Its findings are particularly unfavorable to K-Cup pods. Greenpeace found that PP #5 rigid plastics are generally not cost-effective for MRFs to sort because of low bale values, sortation challenges, contamination, and limited downstream demand *Id.*, pg. 44. The survey revealed that only two U.S. facilities currently operate with a combined capacity sufficient to process about 2% of the nation's rigid polypropylene (#5) waste. *Id.*, pg. 38 In short, the Greenpeace Report does not support Keurig's suggestion that widespread recycling infrastructure exists.

The SCS and Greenpeace reports reinforce one another by distinguishing nominal acceptance from actual recyclability. SCS found that K-Cups frequently fail

mechanical sorting even where #5 plastic is accepted, while Greenpeace independently found that PP #5 rigid plastics are generally not economically viable to sort and that national reprocessing capacity is only approximately 2%. Read together, these findings undermine Keurig's reliance on isolated acceptance rates as evidence that K-Cups are actually recyclable in practice.

## IV. SB 343's SAFE HARBOR DOES AND CAN NOT BAR PLAINTIFF'S CLAIMS

As an initial matter, Keurig's SB 343 safe harbor argument is seemingly undercut as a court in this District has preliminarily enjoined the enforcement of SB 343. *California League of Food Producers v. Bonta*, No. 3:26-CV-01675-WQH-BLM, 2026 WL 2055589 (S.D. Cal. July 14, 2026). Putting aside the apparent mootness of the SB 343 safe harbor defense, Plaintiff's claims do not hinge upon SB 343 as a predicate act to any of Plaintiff's proposed class-wide claims despite Keurig's best efforts to re-cast Plaintiff's claims otherwise. MTD, pgs. 23-27 Nor, does the safe harbor in SB 343 give blanket amnesty to violations of pre-existing statutes and ordinances as it relates to misleading recycling claims. Keurig attempts to minimize Plaintiff's citations to the Green Guides by arguing the FAC is implicitly reliant upon SB 343. MTD, pgs. 23-26. The SB 343 safe harbor should be properly read to safeguard companies from claims under the more stringent recycling representations that are the crux of SB 343 as compared to already-existing statutes concerning recyclability claims including the Green Guides.

The Green Guides are federal recyclability marketing guidelines promulgated by the Federal Trade Commission, separate and apart from any state statute and code including SB 343. The 60% threshold referenced in the Green Guides goes to whether a recycling claim can be deemed qualified or unqualified. 16 C.F.R. § 260.12(b)(2). If recycling facilities are available to less than 60% of consumers or communities, "marketers should qualify all recyclable claims," and expressly

require the strength of the qualification to correspond to the degree of recycling access. *Id.* Under the Green Guides, labeling qualifications get more stringent as recycling becomes less and less accessible. *Id*.

Senate Bill 343, also referenced as California's Accurate Recycling Labeling Law, was enacted in 2021 to amend Cal. Pub. Res. Code §42355.51 to generally prohibit the display and use of a chasing arrows symbol or other similar mark on a plastic product or packaging that implied the product was recyclable unless specific requirements under SB 343 were met. SB 343 also amended Cal. Bus. & Prof. Code § 17580.5. Critically, the enforcement of SB 343 was not to take effect until 18 months following the publication of the Material Characterization Report by Cal Recycle which compiled voluminous recycling studies as mandated under SB 343. The Cal Recycle Report was published on April 4, 2025, which triggered an effective date of October 4, 2026. *Id*. As part of this 18 month window, SB 343 grants companies a safe harbor from compliance with SB 343 until October 4, 2026, with the following provision of the statute spelling out what the safe harbor applies to:

> Subject to paragraph (2), a product or packaging that displays a chasing arrows symbol, a chasing arrows symbol surrounding a resin identification code, or any other symbol or statement indicating the product or packaging is recyclable, or otherwise directing the consumer to recycle the product or packaging, is deemed to be a deceptive or misleading claim ***pursuant to this section and Section 17580.5 of the Business and Professions Code*** unless the product or packaging is considered recyclable in the state pursuant to subdivision (d) and is of a material type and form that routinely becomes feedstock used in the production of new products or packaging.
>
> Cal. Pub. Res. § 42355.51(b)(1) (emphasis added)

A. <u>SB 343 Safe Harbor Is Confined To Claims Under SB 343 And The Amendments to Cal. Civ. Code 17580.5</u>

There is no language in SB 343 that clearly communicates a legislative intent to extend a safe harbor to all claims challenging recycling misrepresentations outside the purview of SB 343, including any pre-existing statutes and ordinances that have

lesser standards than what was to be enacted via SB 343. Nor does SB 343 affirmatively permit conduct challenged by Plaintiff outside the thrust of SB 343's new regulations. The application of a legislative safe harbor is limited to "challenged conduct [that] ***must be affirmatively permitted*** by statute—the doctrine does not immunize from liability conduct that is merely not unlawful." *Ebner*, 838 F.3d at 963. (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 973 P.2d 527 (1999) (emphasis added) In its recent preliminary injunction order, the *California League of Food Producers* court observed other already-existing avenues for pursuing actions concerning recycling claims in distinguishing between SB 343 and "…other provisions of the California Business and Professional Code [that] also provide causes of action based on false or misleading claims made in connection with commercial products, including for claims related to the recyclability of products and packages." *Cal. League of Producers*, 2026 WL 2055589, *34 (citing the Green Guides) That the *Cal. League of Producers* court didn't discuss any purported breadth and application of SB 343 to other statutes is notable. *Id*.

Keurig points to *Bhotiwihok v. Fairlife, LLC*, No. 2:25-CV-01650-ODW (AGRX), 2026 WL 413749 (C.D. Cal. Feb. 13, 2026) as determinative of the breadth of the SB 343 safe harbor. MTD, pg. 26. There, the court found Bhotiwihok's claims to be barred by the safe harbor under SB 343. *Id*, *7. However, the court's ruling as to Bhotiwihok's specific claims went to alleged violations of Cal. Pub. Res. Code § 42355.51 which appear to have been intractably intertwined with Bhotiwihok's other claims. *Id*.; *See also* RJN Ex. I, at pg. 77, ¶234. Notably, the *Bhotiwihok* court did not go as far as to explicitly extend the SB 343 safe harbor to any misleading recycling claims that may be brought outside the context of Bhotiwihok's claims. *Id*., *7

Indeed, statutory context and reading of the entire statute matters here as to

the applicability of the SB 343 safe harbor. SB 343 clearly enacted more exacting and demanding plastic recyclability claims subject to an 18 month holding pattern following the publication of the Cal Recycle studies. *See* Cal. Pub. Res. § 42355.51. Even more, the more demanding standard of SB 343 spills over as a per se violation of Cal. Bus. & Prof. Code 17580.5: "Displaying a chasing arrows symbol or any other statement indicating the product is recyclable directly on the product ***shall be deemed*** to be deceptive or misleading pursuant to this section and Section 17580.5 of the Business and Professions Code." Cal. Pub. Res. § 42355.51(b)(3)(A) (emphasis added). A reasonable reading of this statute would lead the reader to conclude that the safe harbor would readily apply to these forthcoming predicate violations of §17580.5 but it would strain credulity and context to read the safe harbor to apply to pre-existing statutes outside the context of SB 343. *See e.g. GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F.Supp.3d 438, 455-456 (N.D. Cal. 2017) (Finding safe harbor within the Cal. Public Resources Code did not extend beyond actions concerning the recycling of architectural paint)

Plaintiff's FAC does not plead a violation of SB 343 nor does the FAC plead a violation of §17580.5 as part of a predicate violation listed in SB 343. FAC, pg. 25, ¶52 As such, the SB 343 safe harbor has no application to Plaintiff's claims.

B. <u>SB 343 Has Been Preliminarily Enjoined and Defendant Likely Cannot Utilize A Safe Harbor</u>

Even if the SB 343 safe harbor may be found to apply to Plaintiff's claims, the effect of the preliminary injunction on the application and enforcement of SB 343 fairly calls into question whether SB 343 may be mooted as applied to Plaintiff's claims. *See generally Cal. League of Producers*, 2026 WL 2055589 While Plaintiff and the prospective class members are not named parties in the injunction, nothing in the order suggests the breadth of the order would be limited to the state of California and other related actors nor would private parties be otherwise free to cite

to SB 343 as a standalone or predicate violation of other consumer statutes. *Id*.

## V. THE PRELIMINARY INJUNCTION AGAINST SB 343 DOES NOT ESTABLISH THAT PLAINTIFF'S CLAIMS ARE UNCONSTITUTIONAL

Perhaps recognizing the awkward posture of attempting to apply the reach of the SB 343 safe harbor to Plaintiff's FAC claims when SB 343 has been preliminarily enjoined, Keurig elects to utilize the injunction as a sword to argue Plaintiff's FAC claims amount to an assault on First Amendment speech protections concerning its misleading recyclability claims on its K-Cup pods. MTD, pgs. 28-29.

As discussed exhaustively herein, Plaintiff does not allege a violation of SB 343 and thus, the preliminary injunction does not and cannot apply to Plaintiff's FAC claims. Nor is there anything in the preliminary injunction order that suggests it would reach beyond the confines of the SB 343 statutory framework.

More pointedly, it is bedrock law that commercial speech defenses are not available to misleading and deceptive labeling practices brought under state consumer protection statutes such as the California Unfair Competition Law, False Advertising Law, and California Legal Remedies Act. *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563-564 (U.S. Sup. Ct., 1980) ("The First Amendment's concern for commercial speech is based on the informational function of advertising…Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it,… or commercial speech related to illegal activity.") (citations omitted) Here, the veracity of the K-Cup pod recycling claims is evaluated under a reasonable consumer standard. This reasonable consumer standard encompasses both literally false advertising and "advertising which, although true, is either actually misleading or which has a capacity,

likelihood or tendency to deceive or confuse the public." *Falcone v. Nestle USA, Inc.*, No. 3:19-CV-723-L-DEB, 2024 WL 4868298, at *6 (S.D. Cal. Sept. 26, 2024), aff'd, No. 24-7707, 2026 WL 74510 (9th Cir. Jan. 9, 2026) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (Cal. 2002).

While claims under SB 343 may come under the coverage of the *Cal. League* injunction order, Plaintiff makes no such claims under SB 343. As Plaintiff has more than sufficiently alleged, Keurig's recycling claims concerning its K-Cup pods would deceive and mislead a reasonable consumer. FAC, ¶¶ 18-24. As such, Keurig can find no shelter for such claims under First Amendment commercial speech protections.

## VI. PLAINTIFF ARE ENTITLED TO EQUITABLE RELIEF

Lastly, Keurig argues that Plaintiff is precluded from bringing a claim for unjust enrichment. MTD, pgs. 29-30. However, Plaintiff is well-positioned to bring his unjust enrichment claim on behalf of himself and other putative class members. While a standalone "unjust enrichment" cause of action may not lie within California law, courts have not summarily discounted such a claim that is predicated upon the unjust conferment of a benefit through a "quasi-contract cause of action" and correlative to a claim for restitution. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-763 (9th Cir. 2015). Indeed, *Astiana* is instructive and fairly applicable to Plaintiff's claims here concerning the K-Cup pods. In *Astiana*, the court found that a quasi-contract under a heading of an unjust enrichment claim may be properly pled as part of allegations concerning misleading and deceptive product labels. *Id.* Importantly, the *Astiana* court was not swayed by arguments concerning the duplicity of the quasi-contract claim to other *Astiana* plaintiff claims as a plaintiff is entitled to separate and varying statements of a claim. *Id*. *See also Norse Straits LLC v. SHM Cabrillo Isle LLC*, No. 3:25-CV-03259-H-BJW, 2026 WL 497405, at *7

(S.D. Cal. Feb. 23, 2026)

Keurig's citations combatting Plaintiff's unjust enrichment claims are unavailing as those cited cases dismissed the respective unjust enrichment claims that were predicated on similar consumer claims of misrepresentation and fraud that were dismissed. MTD, pg. 30. *See e.g. In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022), aff'd, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023)(dismissing unjust enrichment claims where the complaint failed to sufficiently allege a misrepresentation or omission); *Gudgel v. Clorox Company*, 514 F.Supp.3d 1177, 1188 (N.D. Cal. 2021) (finding plaintiff's failure to adequately allege a deception compelled a dismissal of the unjust enrichment claim); *Garza v. Spectrum Brands Pet LLC*, 760 F.Supp.3d 1039, 1052 (E.D. Cal. 2024)(dismissal of unjust enrichment after plaintiff failed to allege an actionable claim of misrepresentation)

Here, Plaintiff's claims concerning Keurig's misleading recyclability of its K-Cup pods are well articulated and readily meet the reasonable consumer standard as discussed thoroughly herein. As such, Plaintiff's unjust enrichment claim should be properly construed as a quasi-contract claim that should go forward along with Plaintiff's other related consumer claims set forth in the FAC.

## CONCLUSION

For the foregoing reasons, the Court should deny both Defendant's Motion To Dismiss and Motion To Strike Class Allegations in their entireties. In the alternative, the Court should grant leave to Plaintiff to file a Second Amended Complaint.

Dated: September 1, 2026

*/s/ Manfred P. Muecke*
Manfred P. Muecke
**Manfred, APC**
*Attorney For Plaintiff*